UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ARAM VARDANYAN, an individual,<br><br>                    Plaintiff,<br><br>          v.<br><br>ANTHONY MOROYAN, an individual;<br>ALPHA VENTURES, L.L.C.; and<br>DOES 1 through 50, inclusive,<br><br>                    Defendants. | Case No.  5:12-cv-05645-HRL<br><br>Related Case No. 5:12-cv-01536-HRL<br><br>**ORDER RE: FURTHER BRIEFING ON DERIVATIVE VERSUS DIRECT CLAIMS AND SETTING FURTHER PRETRIAL CONFERECE** |

This consolidated action is brought by Aram Vardanyan, a shareholder and former member of the board of directors of Viasphere International, Inc. ("Viasphere"). He sues Viasphere, Anthony Moroyan (a Viasphere shareholder and current board member), and Alpha Ventures ("Alpha"), a company apparently solely owned by Moroyan. In his affirmative case, Vardanyan brings 12 claims, and in related case 12-cv-01536 Vardanyan brings 4 counterclaims. The court consolidated these claims and counterclaims for trial.

On March 21, 2014 the court ordered briefing addressing whether Vardanyan's claims were proper direct claims against defendants or if they should have been brought as derivative claims. Dkt. No. 82. Vardanyan and Moroyan both responded, Dkt. Nos. 86, 87, and Vardanyan also requested additional time to respond, Dkt. No. 83. The court granted Vardanyan's motion for additional time,

1  Dkt. No. 89, and received another set of briefs addressing the direct versus derivative issue. *See* Dkt.
2  Nos. 90, 92, and 96.
3        Having reviewed the parties' submissions, the court finds that Vardanyan can only maintain
4  his stock dilution claims in a direct action, and denies leave to amend his complaint to convert the
5  remaining claims into derivative claims.

## I. VARDANYAN'S ALLEGATIONS

Vardanyan alleges that Moroyan and other, unnamed, board members:

- Misappropriated Viasphere funds for personal use, including taking unnecessary trips and constructing a personal residence;
- Mismanaged Viasphere funds;
- Failed to provide Vardanyan with accurate financial statements and tax documents relating to Viasphere;
- Made fraudulent proxy disclosures relating to Viasphere stock options;
- Entered into illegal or fraudulent contracts with Alpha that provided no material benefit to Viasphere; and
- Diluted plaintiff's share of Viasphere stock, which resulted in the loss of his position on the Viasphere Board of Directors.

In his affirmative case, Vardanyan brings twelve claims for: (1) conversion of Viasphere funds; (2) constructive fraud for failure to disclose Viasphere financial information; (3) fraud relating to the consulting contract; (4) breach of fiduciary duty by Moroyan for dilution, misuse of funds, and false proxy statements; (5) intentional misrepresentation by Moroyan; (6) negligence and negligent misrepresentation for diverting funds from Viasphere to Alpha Ventures; (7) concealment for using Viasphere funds for personal use; (8) unjust enrichment against Alpha relating to the consulting contract; (9) declaratory relief that the dilution was improper and to restore Vardanyan's ownership interest; (10) injunctive relief to stop Moroyan's misuse of Viasphere funds; (11) imposition of construction trust against Alpha for the benefit of Viasphere; and (12) violation of California Business and Professions Code § 17200, unlawful business

practices through the misuse of Viasphere funds. In Case No. 12-1536, Vardanyan brings four counterclaims against Viasphere for (1) breach of fiduciary duty related to dilution and misuse of funds; (2) aiding and abetting the breach of fiduciary duty; (3) conversion of Viasphere funds for personal use; and (4) negligence and constructive fraud for failing to disclose financial information.

Vardanyan seeks $4,000,000 in compensatory damages, economic damages, a declaration restoring his ownership percentage of Viasphere stock, and other relief. Dkt. No. 74 at 13-14.

## II. ANALYSIS

As discussed in the court's prior orders, Dkt. Nos. 82 and 89, "[i]t is crystal clear that Vardanyan is pursuing a direct action against Viasphere, Moroyan, and Alpha" and "[w]ith one possible exception, all of Vardanyan's asserted claims appear to this court to be derivative, not direct. To pursue derivative claims, a shareholder would have to file a derivative action." The court therefore required Vardanyan to "specifically and in detail make an offer of proof. What is the evidence that will show that he suffered injury in greater measure than other similarly situated shareholders or an actual injury that was unique to him?"

### A. Direct versus derivative claims

Shareholders may bring two types of actions, "a direct action filed by the shareholder individually (or on behalf of a class of shareholders to which he or she belongs) for injury to his or her interest as a shareholder," or a "derivative action filed on behalf of the corporation for injury to the corporation for which it has failed or refused to sue." *Friedman*, Cal. Practice Guide: Corporations (The Rutter Group 2004) ¶ 6:598, p. 6–127. "The two actions are mutually exclusive: i.e., the right of action and recovery belongs either to the shareholders (direct action) or to the corporation (derivative action)." *Id.* When the claim is derivative, the "shareholder is merely a nominal plaintiff. . . . Even though the corporation is joined as a nominal defendant . . . , it is the real party in interest to which any recovery usually belongs." *Friedman*, ¶ 6:602, pp. 6–128.1 to 6–128.2.

The proper characterization of a claim as direct or derivative is governed by the law of the

3

state of incorporation, which in this case is California. *See Kennedy v. Venrock Associates*, 348 F.3d 584, 589 (7th Cir. 2003); *7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*, 38 F.3d 211, 221 (5th Cir.1994). California corporate law is functionally identical to Delaware corporate law. *See Oakland Raiders v. National Football League*, 93 Cal. App. 4th 572, 586 n. 5 (2001) ("The parties agree that we may properly rely on corporate law developed in the State of Delaware given that it is identical to California corporate law for all practical purposes.").

Under Delaware law, the character of a claim is determined by answering two questions: "Who suffered the alleged harm-the corporation or the suing stockholder individually-and who would receive the benefit of the recovery or other remedy?" *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1036 (Del. 2004). Under this test "a court should look to the nature of the wrong and to whom the relief should go. The stockholder's claimed direct injury must be *independent* of any alleged injury to the corporation." *Id.* (emphasis added). The plaintiff satisfies his burden of establishing that the claim is derivative if he can show that "he or she has suffered an injury that is *not dependent on an injury to the corporation.*" *Id.* (emphasis added).

California words this test slightly differently, stating an action is derivative if "the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance of distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent the dissipation of its assets." *Jones v. H.F. Ahmanson & Co.*, 1 Cal.3d 93, 106-107 (1969).

### B. Claims that are clearly derivative: claims 1, 2, 3, 5, 6, 7, 8, 10, 11, and 12, and counterclaims 3 and 4

In his briefing, Vardanyan essentially admits that claims 1, 2, 3, 5, 6, 7, 8, 10, and 11 and counterclaims 3 and 4 cannot be maintained as direct claims. Dkt. No. 90 at 5 n.2 (affirmative claims), 6 n.3 (counterclaims). The court agrees. These claims all relate to injuries Moroyan allegedly inflicted on Viasphere as a corporation, not Vardanyan.

Vardanyan contends that claim 12 (violation of Cal. Bus. & Prof. Code § 17200 can be maintained as a direct claim. Claim 12 is not related to the dilution. Vardanyan claims that

4

Moroyan and Alpha Ventures violated § 17200 through the consulting agreement and construction of a personal residence. *See* Dkt. No. 90 at 11; Complt. ¶ 83.

### C. Counterclaims 1 and 2

Vardanyan also contends that he should be allowed to proceed on counterclaims 1 (breach of fiduciary duty) and 2 (aiding and abetting the breach). Counterclaims 1 and 2 are brought against Viasphere as a corporation only. No individual defendants are named. Counterclaim 1 alleges that Viasphere's board of directors diluted Vardanyan's stock and mismanaged Viasphere funds. Counterclaim 2 alleges that "each of the counter-defendant Viasphere's subsequent board of directors aided and abetted and conspired to undertake the others' breaches of fiduciary duty." Case No. 12-1536, Dkt. No. 34 ¶ 24. The counterclaims contains no detail about any of the director's actions. Counterclaim 1 is based solely on actions by the unnamed board of directors, as is counterclaim 2. The court fails to see how the corporation can aid and abet its own alleged breach of fiduciary duty, without naming any specific directors. Accordingly, counterclaim 2 is dismissed.

### D. The stock dilution claims can be maintained as direct claims: claims 4 and 9, and counterclaim 1

The remaining claims (4, breach of fiduciary duty; 9, declaratory relief) and counterclaim (1, breach of fiduciary duty) are based in relevant part on Vardanyan's allegations regarding the dilution of his stock and his ouster from the Board of Directors of Viasphere.[1]

The thrust of Vardanyan's dilution theory is that at one point he owned enough shares of Viasphere to guarantee his election onto the Board of Directors, but Moroyan and other board members caused additional shares to be issued. This left Vardanyan with a less than 20% stake in Viasphere, the threshold to ensuring himself a seat on the board, and caused him to lose reelection onto the Board. Vardanyan alleges that no other shareholder lost his or her board seat as a result of the issuance of additional shares, and therefore his injury is personal and unique.

---

[1] The claims also allege facts relating to mismanagement and fraudulent disclosures, but the only possible direct injury to Vardanyan, as opposed to Viasphere, relates to the dilution theory.

5

Vardanyan alleges that Moroyan carried out the dilution by making misrepresentations to the Board and manipulating Viasphere stock options. Dkt. No. 87 at 2, 5. More specifically Vardanyan claims "Moroyan first caused Restated Articles of Incorporation to be filed, increasing the number of shares Viasphere is authorized to issue. . . . Despite being on the Board, Vardanyan never received or was shown the Restated Articles. . . . Thereafter, Moroyan issued shares to himself and other prior and new shareholders." Dkt. No. 97 at 4. Vardanyan also claims that Moroyan shifted stocks between himself and Alpha Ventures, although the court fails to see the significance of this allegation. *Id.* at 5. Additionally, Vardanyan alleges that "Viasphere neither benefitted economically from the issuance of these new shares, nor did it profit from this stock dilution." Complt. at ¶ 15. Vardanyan does concede that "Vardanyan does not contend that he is the sole shareholder that suffered dilution, but the he is the shareholder that suffered the most injury from the dilution, including the loss of his Director position." Dkt. No. 96 at 3.

Defendants argue that Vardanyan has never established the percent of stock he owned, or proved that owning 20% of the outstanding shares guarantees a spot on the board. Instead, defendants contend Vardanyan "simply failed to attain re-election, just as did other nominees at the 2011 Viasphere Shareholder's Meeting who failed to obtain sufficient votes for re-election." Dkt. No. 86 at 5. Furthermore, defendants argue that "dilution is mathematical in nature" and therefore cannot be unique to Vardanyan. Dkt. No. 92 at 5-6.

The Delaware Supreme Court has explained that where:

> (1) a stockholder having majority or effective control causes the corporation to issue "excessive" shares of its stock in exchange for assets of the controlling stockholder that have a lesser value; and (2) the exchange causes an increase in the percentage of the outstanding shares owned by the controlling stockholder, and a corresponding decrease in the share percentage owned by the public (minority) shareholders. . . .
>
> [T]he public (or minority) stockholders also have a separate, and direct, claim arising out of that same transaction. Because the shares representing the "overpayment" embody both economic value and voting power, the end result of this type of transaction is an improper transfer-or expropriation-of economic value and voting power from the public shareholders to the majority or controlling stockholder. For that reason, the harm resulting from the

6

> overpayment is not confined to an equal dilution of the economic value and voting power of each of the corporation's outstanding shares. A separate harm also results: an extraction from the public shareholders, and a redistribution to the controlling shareholder, of a portion of the economic value and voting power embodied in the minority interest. As a consequence, the public shareholders are harmed, uniquely and individually, to the same extent that the controlling shareholder is (correspondingly) benefited. In such circumstances, the public shareholders are entitled to recover the value represented by that overpayment-an entitlement that may be claimed by the public shareholders directly and without regard to any claim the corporation may have.

*Gentile v. Rossette*, 906 A.2d 91, 100 (Del. 2006) (footnote omitted); *see also In re Tri-Star Pictures, Inc.*, 634 A.2d 319 (Del. 1993) (holding that minority shareholders had a direct cause of action where largest shareholder did not suffer a dilution of cash value, of voting power, or of ownership percentage to the same extent and in the same proportion as the minority shareholders). *Gentile* further elaborated that the reduction in voting power does not have to be material, that is the challenged transaction need not reduce the holdings of the plaintiff from majority to minority status. 906 A.2d at 101 (quoting *Tri-Star*, 634 A.2d at 331).

Later cases elaborating on *Gentile* have emphasized that the direct claim must be a result of "situations with a controlling shareholder and transactions that resulted in an improper transfer of both economic value and voting power from the minority stockholders to the controlling stockholder." *Feldman v. Cutaia*, 951 A.2d 727, 732 n.26 (Del. 2008); *Innovative Therapies, Inc. v. Meents*, Civil Action No. DKC 12-3309, 2013 WL 2919983 (D. Md. June 12, 2013).

Here, interpreting the complaint and papers generously, Vardanyan has alleged both requirements for a *Gentile*-type direct claim: (1) that Viasphere did not benefit from the issuance of the extra stock, complt. at ¶ 15, and (2) that Vardanyan's voting power was improperly diminished, *id.* at ¶ 14. Because Vardanyan has alleged that his share of voting power was improperly diminished by the issuance of Viasphere stock to Moroyan and others, he has stated a direct claim.

At this point, he has certainly not proven any such claim. Although the court explicitly asked plaintiff for a proffer of the specific evidence he will use to prove his claims, his responses to the court were limited to broad restatements of the allegations in the complaint and his prior

7

papers. The court remains highly skeptical of the merits of Vardanyan's claims. For example, Vardanyan has not informed the court of any evidence to support his allegation that the diluting stock was issued improperly (i.e. for no value or for the purpose of dilution). Nonetheless, a review of the complaint and other papers reveals enough to pass over a Rule 12(b)(6) hurdle. The court will proceed with claims 4 and 9 and counterclaim 1, recognizing that defendants' have raised several other objections to these claims in their papers beyond the direct versus derivative question. *See* Dkt. Nos. 86 and 92.

### E. The court will not grant Vardanyan leave to amend the complaint to allege derivative claims

Recognizing that most of his claims are derivative, Vardanyan asks for leave to amend to reallege his claims as such. The court already concluded that Vardanyan cannot simply convert his claims to a derivative action. Dkt. No. 82. First, it is simply too late in the case to amend the complaint to plead an entirely new type of action. Fed. R. Civ. Pro. 15(a).  Second, it is questionable whether Vardanyan would be a viable plaintiff in a derivative suit. *See* Fed. R. Civ. Pro. 23.1(a) (requiring plaintiff to "fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association."). Vardanyan was a member of the Viasphere Board of Directors during some of the events he complains of here, and may have voted in favor of some of the challenged transactions. Dkt. No. 71 at 5-6. This makes Vardanyan a possible defendant, not plaintiff. Third, in these consolidated actions, the same attorney represents both Viasphere and Moroyan. In a derivative suit, the same attorney usually cannot represent both the aggrieved corporation and the alleged wrongdoer(s). *See* Restatement (Third) of the Law Governing Lawyers, § 131, cmt. g (2000) (stating that in derivative actions, a lawyer for an organization ordinarily may not also represent the individual officers and directors, even with informed consent); *In re Oracle Sec. Litig.,* 829 F. Supp. 1176, 1189 (N.D. Cal. 1993). The court will not allow an amendment that will force a change in attorneys on the eve of trial. Furthermore, it is possible that defendants' attorney would be disqualified from any role in a derivative suit because of the knowledge he has acquired in these

cases. *See* Restatement § 132.

**III. ORDER**

For the reasons explained above, the court will allow Vardanyan to proceed on claims 4 and 9, and counterclaim 1, as related to his dilution theory. Claims 1, 2, 3, 5, 6, 7, 8, 10, 11, and 12, and counterclaims 2, 3, and 4 are dismissed.

The parties are ordered to appear at a further pretrial conference on October 16, 2014 at 1:30 p.m. The pretrial conference will relate only to the remaining claims and the parties are ordered to submit completely new pretrial papers on those claims. The parties must scrupulously follow the court's Standing Order re: Pretrial Preparation.

Dated: July 29, 2014

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

9